1
2
3
4
5                        **UNITED STATES DISTRICT COURT**
6                        **EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| SHARON NEVA, ) | |
| ) | **NO. CV-04-0071-AAM** |
| Plaintiff, ) | |
| ) | **ORDER GRANTING** |
| v. ) | **DEFENDANT'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| MULTI AGENCY COMMUNICATIONS ) | |
| CENTER (MACC), ) | |
| ) | |
| Defendant. ) | |

**BEFORE THE COURT** is defendant Multi Agency Communications Center's (MACC) Motion for Summary Judgment. (Ct. Rec. 9). A motion hearing was held on July 7, 2005, in Yakima, Washington. Plaintiff Sharon Neva was represented by Steven C. Lacey, Esq. MACC was represented by Jennifer D. Homer, Esq.

**I. BACKGROUND**

Plaintiff filed a complaint against defendant in Grant County Superior Court on February 2, 2004, alleging wrongful termination. (Ct. Rec. 1, p. 12). Plaintiff was employed as the Director of MACC until her discharge in May 2003. (Ct. Rec. 15, p.1). MACC is a governmental entity established by local public entities and Grant County to consolidate the dispatch of emergency calls from local law enforcement, medical emergency and fire fighting agencies. (Ct. Rec. 22). Plaintiff claims her status as an at-will employee was modified by employer conduct and words, and her summary termination, without notice or an opportunity to be heard, constitutes (1) a breach of implied contract, (2) a breach of specific promises for specific circumstances, (3) a violation of 42 U.S.C. § 1983, and (4) wrongful discharge in violation of public policy. (Ct. Rec. 1, p. 12-15).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY**
**JUDGMENT**                        Page -1-

Defendant filed a Notice of Removal to Federal Court on February 23, 2004, based on plaintiff's 42 U.S.C. § 1983 claim. (Ct. Rec. 1, p. 2). In its motion for summary judgment, defendant claims there is no issue of material fact that plaintiff was an at-will employee at all times, who served at the pleasure at the MACC Board of Directors (Board) and was not entitled to pre-termination due process procedure. It argues that plaintiff presents no evidence that would lead the court to find, as a matter of law, that there was an express or implied contract to modify the at-will status. (Ct. Rec. 9, p. 2). In support of its motion, defendant submitted a declaration of MACC's Board President (Steve Shinn), portions of a deposition of plaintiff, and a declaration of Mary Allen (current Director), with the MACC interlocal agreement and bylaws attached as exhibits. (Ct. Rec. 8, 22, 23). Upon review of all the evidence, the record establishes these undisputed facts:

1. MACC is a municipality created by an interlocal agreement pursuant to RCW Chapter 39.34, subject to the Open Meetings Act, RCW Chapter 42.30. (Ct. Rec. 22).
2. The Board is MACC's governing body that must approve all official action. (Ct. Rec. 22, p. 21).
3. Plaintiff was Director for MACC from October 1999 to May 2003. (Ct. Rec. 15, p. 1) (Neva Declaration).
4. Steve Shinn was Board President when plaintiff was terminated. *Id*. at 3.
5. The Board was plaintiff's direct supervisor. (Ct. Rec. 22, p. 22; 25-2, p. 4).
6. The Board never told plaintiff she was employed at-will and never told her she would be terminated for cause only. (Ct. Rec. 25-4, p. 1-2).
7. Plaintiff was in charge of maintaining personnel polices and making sure they were current. (Ct. Rec. 25-4, p. 6-10).
8. Plaintiff rewrote the entire personnel policy manual in 2000 and had the policy manual approved formally by the Board. *Id.*
9. Plaintiff was never formally evaluated during her employment at MACC and prior to her departure, no personnel policy required evaluations for her position. (Ct. Rec. 25-2, p.16).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**      Page -2-

1  10.  In early 2003, the Human Resources Director from Moses Lake attended a Board meeting to
2      discuss how Moses Lake developed its policies and procedures for employee evaluation.
3      (Ct. Rec. 15, p. 6).
4  11.  At an open meeting in February 2003, the Board appointed a Job Review Committee to
5      develop a job description and evaluation form for the Director. *Id*.
6  12.  The Committee met twice, but did not present the Director's job description or evaluation to
7      the Board before plaintiff was terminated. (Ct. Rec. 25-3, p.11).
8  13.  In early May 2003, Plaintiff was asked to resign, refused, and was discharged by the Board.
9      (Ct. Rec. 15).

Plaintiff argues she was promised by Board President Shinn that she would not be fired summarily. (Ct. Rec. 15, p. 3). She also states she was told by Board member William Gonzales that she would not be discharged without utilization of a fair process of evaluation. *Id*. Defendant disputes that Mr. Shinn promised plaintiff she would not be terminated summarily. (Ct. Rec. 21, p. 2). Defendant disputes that Mr. Gonzales promised plaintiff she would be evaluated prior to any discharge decision. (Ct. Rec. 21, p. 3). Although Exhibit lists for both parties include the MACC Policy Manual(s), no manual was presented as evidence in support of either party's position. (Ct. Rec. 16, p. 2; 18, p. 2).

**II. DISCUSSION**

**A. Legal Standard - Summary Judgment**

Summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct, 2505 (1986);

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**                                    Page -3-

Semegen v. Weidner, 780 F.2d 727, 732 (9th Cir. 1985). The moving party bears the initial burden of informing the court of the basis of its motion and identifying evidence of record it believes demonstrates the absence of "a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). A defendant who seeks summary judgment must demonstrate the absence of a genuine issue of material fact either by (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim, or (2) showing there is no evidence to support an essential element of plaintiff's claim. Id. at 322-25. Rule 56 does not require the moving party to support its motion with affidavits or other documents negating the opponent's claim." Id. at 323. If the moving party satisfies its initial burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 n.11, 106 S.Ct.1348 (1986). The opposing party cannot rest on the mere allegations or denials in a pleading. Id. In short, the opposing party may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Only disputes over facts that might affect the outcome of the case under the applicable law will preclude entry of summary judgment. Anderson, 477 U.S. at 250. In determining if summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. Id. at 255. Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. Id. at 250. Conversely, any doubt about the existence of any issue of material fact requires denial of the motion. Id. at 255.

**B. Federal Claim - Violation of Constitutional Due Process**

42 U.S.C. 1983 of the Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**                              Page -4-

> rights, privileges or immunities secured by the constitution and laws,
> shall be liable to the party injured in an action at law. . . .

A Section 1983 claim may be brought against municipalities, as well as individuals. See e.g., Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2108 (1978). Liability against a municipality can only be established if the plaintiff proves (1) she had a property interest protected by the due process clause of the Constitution, and (2) an official policy or custom led to the deprivation of that right. A person's property interest in employment is created and defined by state law, but protected by the due process clause of the state and federal constitutions. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct.2701 (1972); Sneed v. Barna, 80 Wash. App. 843, 849, 912 P.2d (1996) (citing Olson v. University of Washington, 89 Wn.2d 558, 563, 573 P.2d 1308 (1978)). In Washington, the general rule is that employment is considered at-will, unless modified. Clark v. Sears, Roebuck & Co., 110 Wash.App. 825, 829, 41 P.3d 1230, 1232 (2002). Also, the Washington State Supreme Court has held that public employment does not immediately create a property interest. Ritter v. Bd of Commissioner, 96 Wn.2d 503, 509, 637 P.2d 940 (1981). A property interest, however, may arise under civil service rules, statutes, collective bargaining agreements, or other agreements that create an "implied contract." Danielson v. City of Seattle, 108 Wn.2d 788, 796, 742 P.2d 717 (1987). A mere subjective expectancy would not be protected. Ritter, 96 Wn.2d at 510. Since at-will employment is the general rule, an employer does not have an affirmative duty to inform an employee that employment of an indefinite duration is "at-will." Havens v. C & D Plastics, 124 Wn.2d 158, 174, 876 P.2d 435 (1994); Hill v. J.C. Penny, 70 Wash.App. 225, 235, 852 P.2d 1111 (1993).

Plaintiff contends her protected property interest exists because there was a mutual understanding that supported her claim of entitlement. (Ct. Rec. 12, p. 9). Citing Ritter, she argues that even absent an express written provision, a property interest can be implied by the words and conduct of the employer. Ritter, 96 Wn.2d at 509 (citing Perry v. Sinderman, 408 U.S. 593, 601, 92 S.Ct. 2694 (1972) ("a due process property interest exists if there are such rules or mutually explicit understandings that support (an individual's) claim of entitlement to the benefit"). She argues that

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**                                Page -5-

1 words and conduct of individual Board members and the Board constituted an independent source
2 capable of creating a property interest. (Ct. Rec. 12, p. 9).

3     Plaintiff's reliance on Ritter is misplaced. In Ritter, a physician claimed a property interest in
4 continued staff privileges at a public hospital. The court, quoting Perry, held a due process property
5 interest exists "if there are such rules or mutually explicit understandings that support (an individual's)
6 claim of entitlement." Ritter, 96 Wn.2d at 509. Because Dr. Ritter had no more than a "subjective
7 expectation" of continued hospital privileges, the court held no property interest had been created. *Id.*
8 Here, plaintiff stated in her deposition that the Board neither told her she was an at-will employee nor
9 that they would terminate her for cause only.[1] (Ct Rec. 25-4, p. 1-2). By her own words, there were
10 no mutually explicit understandings between the Board and her regarding continued employment. The
11 Board minutes submitted by plaintiff do not include any explicit promises that plaintiff would only be
12 terminated after the creation of a job description and evaluation. Plaintiff also states that after she
13 spoke to Board President Steve Shinn about a new job description and evaluation, she spoke to Board
14 member William Gonzalez for further assurances about continued employment. (Ct. Rec. 25-2, p.7,
15 17). She stated Mr. Gonzalez "left me feeling that he was definitely not in favor of firing me . . . ."
16 This subjective assumption does not create a property interest. Further, she has not presented evidence
17 of written policies that, as discussed below, may form the basis for "mutually explicit understandings"
18 that could give rise to a property interest.

19     It is settled law in Washington state that at-will employment may be modified (1) by an express
20 or implied agreement subject to the rules of contract formation (offer, acceptance, consideration), or
21 (2) by an implied contract, without the traditional contract elements, based on the specific written

---

[1] Plaintiff asserts she was never told she was an at-will employee at the time she was hired and was not required to sign an acknowledgment of at-will status when she took the job. (Ct. Rec. 15, p. 2). She appears to argue that since the other employees were required to sign such an acknowledgment, and she was not, she could assume her employment was not at-will. As stated above, absent a statute, bargaining agreement, or other valid agreement, "at-will" employment is the general rule. An employer does not have an affirmative duty to inform an employee that employment for an indefinite duration is "at-will." Hill, 70 Wash.App. at 235.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**     Page -6-

policies announced by the employer in a written employee handbook. Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 228-29, 685 P.2d 1081 (1984). The foregoing of another job opportunity is not sufficient consideration to defeat an employer's right to terminate at will. Roberts v. Atlantic Richfield Co., 88 Wn.2d 887, 895-96, 568 P.2d 764 (1977) (citation omitted). To be considered sufficient, consideration must be in addition to required services and result in a detriment to the employee and benefit to the employer. *Id.* Plaintiff has not presented facts to establish consideration for the formation of an express or implied contract. She does not present evidence of an offer from the Board or acceptance. She states only that she refrained from seeking alternative employment at the time based on alleged assurances from individual Board members in private conversations that she would not be summarily discharged. (Ct. Rec. 15, p.3). This is not adequate consideration to form a contract.

Regarding an implied contract without the traditional elements, in Thompson, the court held where an employer creates an atmosphere of job security and fair treatment by making promises of specific treatment in specific situations in a policy manual, and "an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship." Thompson, 102 Wn.2d at 229-30; Kuest v. Regent Assisted Living, Inc., 111 Wash.App. 36, 48, 43 P.3d 23, 29 (2002); Winspear v. The Boeing Company, 75 Wash App. 870, 880 P. 2d 1010 (1994), review denied, 126 Wn.2d 1006, 891 P.2d 38 (1995). Promises of specific treatment in specific situations must be those on which the employee can justifiably rely. Bulman v. Safeway, Inc., 144 Wn.2d 335, 342-44, 352-53, 27 P.3d 1172 (2001) (employee must show statements in the policy manual amounted to promises of specific treatment, and employee justifiably relied upon them, and the promise was breached). In the absence of a written policy promising specific treatment in specific circumstances, oral representations made by an employee's supervisor are insufficient to establish an enforceable promise. Drobny v. Boeing, 80 Wash.App. 97, 108, 907 P.2d 299 (1995). Opinions and assurances of specific treatment by one supervisor to one employee cannot obligate an employer to treat that employee in a specific manner, where the promise is not found in any written official directive. Winspear, 75 Wash. App. at 880.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**                              Page -7-

1     In <u>Winspear</u>, a Boeing personnel manager orally promised Winspear that he would not lose his
2  job if he pleaded guilty to a misdemeanor charge arising out of felony child molestation charges, and
3  that he could use vacation and leave without pay to serve any sentence. He pleaded guilty, then Boeing
4  fired him for "unacceptable conduct." *Id*. at 872. Winspear sued Boeing, claiming the personnel
5  manager's oral promises created an implied contract because he had relied upon them in pleading
6  guilty. *Id*. at 873. The court held that the oral promise alone was not enough to create an implied
7  contract, and since there was no consideration, an express contract was not formed.    The court in
8  <u>Winspear</u> reasoned that the implied contract analysis in <u>Thompson</u> refers "specifically to written
9  employment policy manuals" and held that <u>Thompson</u> "never suggested that an oral promise by an
10 employer would be sufficient to modify an otherwise at-will employment relationship under common
11 law rule." <u>Winspear</u>, 75 Wash. App. at 876.

12     Here, there is no written policy or employee manual to create an atmosphere of fair treatment
13 or a promise of specific treatment, and there is no justifiable reliance on a MACC representative with
14 the authority to bind the organization. Plaintiff has offered as evidence Board minutes establishing
15 there was a job description and evaluation form for the Director being created for consideration by the
16 Board, but the minutes do not include factual evidence of Board approved promises regarding her
17 continued employment. (Ct. Rec. 15, p.6). Further, plaintiff admits these documents were not intended
18 to represent employment policy. (Ct. Rec. 25-3, p. 8). The fact that an evaluation and job description
19 were being created is undisputed. However, it does not establish a promise as far as termination policy.
20 An implied contract that gives rise to a protected interest must be based on official employer actions
21 and /or policy, not on the oral assurances of a supervisor. Pursuant to the Board bylaws, the Board as
22 a whole has sole authority to establish policy and prepare standards of performance for the Director.
23 (Ct. Rec. 22, p. 22); see also <u>McCormick v. Lake Washington School District</u>, 99 Wash. App. 107,
24 113, 992 P.2d 511 (2000) (promise made by unauthorized agent of District could not create justifiable
25 reliance).

26     Plaintiff acknowledges that official actions must be approved by a majority of the Board
27
28 **ORDER GRANTING DEFENDANT'S**
   **MOTION FOR SUMMARY**
   **JUDGMENT**                                    Page -8-

1 members at an open meeting. (Ct. Rec. 25-4, p. 5 11-13). She states in her deposition that the Board
2 as a whole never said it would only terminate her for cause or give her an evaluation before termination.
3 (Ct. Rec. 25-4, p. 2). She also states Mr. Gonzalez's statements to her that he was not in favor of firing
4 her without an evaluation were only his opinions. (Ct. Rec. 25-2, p. 17).  Based on these statements,
5 it is difficult to imagine that plaintiff could have justifiably relied upon the statements of individual
6 members. See Murphy v. State, 115 Wash.App. 297, 317, 62 P.3d 533 (2003) (the duties owed to an
7 employee by the Board cannot be created ultra vires by unauthorized individuals).  Plaintiff has not
8 presented evidence of an express agreement, an implied contract, or a mutually explicit understanding
9 that she could justifiably rely upon, that would modify her at-will employment status.  The court finds
10 as a matter of law plaintiff was an at-will employee at the time of her termination.  Consequently, she
11 has not shown there is a genuine issue of material fact with regard to the § 1983 claim.

**C. Pendent State Claims**

14 In addition to her federal claim, plaintiff asserts three pendent state claims that rely on the
15 existence of an implied contract with the defendant:  breach of implied contract, breach of specific
16 promises for specific circumstances, and wrongful discharge in violation of public policy.  (Ct. Rec.
17 1, p.12).  As discussed above, the court finds as a matter of law that no implied contract was formed
18 to modify plaintiff's at-will employment status; thus, there can be no breach.  Further, no express or
19 inferred promises of specific treatment were made to the plaintiff by the Board, the sole policy-making
20 authority for MACC.  Plaintiff, as Director of MACC, knew or should have known, that without Board
21 action, she could not rely upon promises made by individual Board members.  For these reasons, she
22 has not presented evidence of material facts for her breach of implied contract and breach of promise
23 of specific treatment claims.

24 Regarding her claim of wrongful discharge, she argues the Board's alleged violation of her due
25 process rights constitutes a violation of public policy. (Ct. Rec. 12, p. 12).  Because plaintiff fails to
26 establish she has a protected property interest, her due process violation claim fails, thus defeating her

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**                              -9-

1 allegation of public policy violation.  Further, plaintiff does not offer evidence of employer action that
2 would discourage public policy-linked employee conduct.

3       In Washington, an at-will employee has a cause of action in tort for wrongful discharge if the
4 discharge "clearly contravenes a clear mandate of public policy."  Thompson, 102 Wn.2d at 232;
5 Magula v. Benton Franklin Title Ins. Co., 79 Wash.App. 1, 901 P.2d 313 (1995).  A plaintiff must plead
6 and prove four elements: (1) existence of a clear public policy (clarity); (2) discouraging the plaintiff's
7 conduct would jeopardize the public policy (jeopardy); (3) a nexus between the public policy-linked
8 conduct and the dismissal (causation); and (4) absence of an overriding justification for dismissal (no
9 justification).  Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 941, 913 P.2d 377 (1996).  The clear
10 public policy must be judicially or legislative created.  Thompson, 102 Wn.2d at 232.  There are four
11 generally recognized public policies linked with termination situations: (1) refusing to commit an illegal
12 act; (2) performing a public duty or obligation; (3) exercising a legal right; or (4) reporting employer
13 misconduct.  Hubbard v. Spokane County, 103 Wn.App. 671, 676-77, 14 P. 3d 806 (2000);  see also
14 Keenan v. Allan, 91 F.3d 1275 (9th Cir. 1996).

15       Plaintiff argues that defendant's actions violated the broad policy guaranteeing due process of
16 law, citing Danielson v. Seattle, 108 Wn.2d 788, 742 P.2d 717 (1987), as support.  (Ct. Rec. 12,
17 p. 12).[2]  Plaintiff's reliance on Danielson appears to be an effort to bootstrap her § 1983 due process
18 argument into a "clear public policy" for her state claim purpose.  Because, however, plaintiff cannot
19 prove she has a protected interest in employment with MACC, she has no claim to due process.
20 Further, plaintiff does not allege protected conduct that led to her dismissal that would fit into the

---

[2] Danielson involved a police officer's discharge after the officer had been charged with a felony.  Unlike the case before this court, Officer Danielson's employment and termination were subject to the provisions not only of a union agreement, but civil service rules and a very specific personnel policy that guaranteed  policemen certain disciplinary proceedings prior to discharge.  An exception to the right to a hearing was when felony charges had been filed against the employee. Danielson, 108 Wn. 2d at 793.  The court held the due process claim depended upon a property right in continued employment, that the civil service rules created a property right, and his right to due process had been satisfied.  Id at 799.  Plaintiff does not cite specifically to any holding in that case that supports her wrongful discharge argument.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY**
**JUDGMENT**      -10-

Gardner wrongful discharge analysis. Without evidence of a nexus between public-policy linked employee conduct and dismissal, there are no issues of material fact for trial.

Summary judgment on the pendent state claims is appropriate.

**III. Conclusion**

Viewing the evidence submitted, and inferences to be drawn therefrom in the light most favorable to plaintiff, the court finds there is no genuine issue as to any material fact with regard to the plaintiff's federal claim or her pendent state claims. As a matter of law, the court finds plaintiff's employment with MACC was at-will, and there is no evidence of an agreement, express or implied, modifying her at-will status.

Accordingly, defendants' Motion for Summary Judgment **(Ct. Rec. 9)** is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED.**

**DATED** this  18th  of July 2005.


  s/ Alan A. McDonald  
ALAN A. McDONALD  
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**                -11-